IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT M. SUTOR AND | : | |
| TERESA Y. SUTOR | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 06-1371 |
| FEDERAL EMERGENCY | : | |
| MANAGEMENT AGENCY, | : | |
| LIBERTY MUTUAL FIRE INSURANCE | : | |
| COMPANY, AND M&N | : | |
| ADJUSTING, INC. | : | |

_____

| | | |
|---|---|---|
| ROBERT M. SUTOR AND | : | |
| TERESA Y. SUTOR | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-2477 |
| FEDERAL EMERGENCY | : | |
| MANAGEMENT AGENCY, | : | |
| LIBERTY MUTUAL FIRE INSURANCE | : | |
| COMPANY, AND PILOT | : | |
| CATASTROPHE SERVICES, INC. | : | |

**SURRICK, J.**                                                    **NOVEMBER  23, 2009**

<u>**MEMORANDUM**</u>

Presently before the Court is Defendant Liberty Mutual Fire Insurance Company's

Motion for Summary Judgment.  (Doc. No. 33.)[1]  For the following reasons, Liberty Mutual's

Motion will be granted.

_____

[1] With the exception of the 2007 Complaint (07-2477, Doc. No. 1), all citations are to the docket in Civil Action Number 06-1371.

**I.     BACKGROUND**

Plaintiffs Robert and Teresa Sutor own the property located at 126 South Bell Avenue, Yardley, Pennsylvania (the "Property").  Plaintiffs purchased two Standard Flood Insurance Policies ("SFIPs") from Liberty Mutual, one covering the Property in 2005 and one covering the Property in 2006.  (*See* 2006 Compl., Ex. A. (hereinafter, the "2005 Policy"); 2007 Compl., Ex. A. (hereinafter, the "2006 Policy").)  A flood damaged the Property in 2005, and a second flood damaged the Property in 2006.  Plaintiffs have filed two actions against Liberty Mutual, one arising out of the 2005 flood and one arising out of the 2006 flood, alleging that Liberty Mutual breached the SFIPs by failing to adequately compensate Plaintiffs for the damage done to the Property by the floods.

Plaintiffs entered into the 2005 Policy in December of 2004.  On April 3, 2005, the first flood damaged the Property.  Liberty Mutual retained the services of an independent adjuster to evaluate the damage to the Property and to assist Plaintiffs in the preparation of a proof of loss. Plaintiffs submitted a proof of loss dated June 21, 2005, to Liberty Mutual requesting a net amount of $8105.89.  (Doc. No. 34, Sutor Aff., Ex. A.)  Since the proof of loss was filed after the 60 days allotted by the terms of the SFIP, Plaintiffs sought and obtained a waiver of the 60-day period from the Federal Insurance Administrator.  (*See* Doc. No. 34, Sutor Aff., Ex. B.)  The request for waiver states that the reasons for the delay was that "there have been foundation issues," that Plaintiffs had hired an engineer and were awaiting his report, and that Plaintiffs "finally agreed to sign [the proof of loss] pending . . . [the] report for possible supplemental damages."  (*Id.*)  Liberty Mutual tendered a total amount of $8959.01 to Plaintiffs for the losses sustained in the 2005 flood, and Plaintiffs accepted the amount.  (*See* Doc. No. 33 at 3; *see also*

2

*id.*, Ex. A ¶ 6.)  Plaintiffs contend, however, that when they submitted the proofs of loss to

Liberty Mutual, they advised Liberty Mutual that they would be supplementing their claims.  (*See*

Doc. No. 34, Sutor Aff. ¶ 6.)  At least some FEMA employees responsible for adjusting

Plaintiffs' claim were apparently aware that Plaintiffs intended to supplement their claims.  (*See*

Doc. No. 34, Sutor Aff., Ex. B.)

Plaintiffs renewed their SFIP with Liberty Mutual in December 2005.  On June 27, 2006,

the second flood damaged the Property.  Liberty Mutual again retained the services of an

independent adjuster to evaluate the damage to the Property and to assist Plaintiffs in the

preparation of a proof of loss.  Plaintiffs submitted a proof of loss dated August 26, 2006, to

Liberty Mutual, requesting a net amount of $5327.23.  (Doc. No. 34, Sutor Aff., Ex. C.)  Liberty

Mutual tendered that amount to Plaintiffs, and Plaintiffs accepted it.  (*See* Doc. No. 33 at 3; *see*

*also id.*, Ex. A ¶ 6.)

Plaintiffs filed no additional proofs of loss in connection with either flood.  The

supplemental claims for which Plaintiffs now seek compensation cover significant damage to the

Property, from cracks in the basement's concrete floor to cracked drywall in the living room.

(*See* Doc. No. 34, Sutor Aff., Ex. D.)  It is not clear whether Plaintiffs informed Liberty Mutual

of the nature or scope of the supplemental claims before filing the instant lawsuits.  In fact, there

is nothing in the record, other than the filing of the two lawsuits,  that suggests that Plaintiffs ever

requested compensation for the supplemental damages.  The only request to Liberty Mutual that

Plaintiffs have provided to the Court is a July 24, 2009, letter itemizing the supplemental claims

and requesting $40,787.88 in additional compensation from Liberty Mutual.[2]  (*Id.*)

## II.    STATUTORY FRAMEWORK

Congress passed the National Flood Insurance Act ("NFIA"), 42 U.S.C. §§ 4001, *et seq.*,

in 1968 with the goal of "limit[ing] the damage caused by flood disasters through prevention and

protective measures, spread[ing] the risk of flood damage among many private insurers and the

federal government, and mak[ing] flood insurance 'available on reasonable terms and conditions'

to those in need of it." *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161, 165 (3d Cir.

1998) (on rehearing) (quoting 42 U.S.C. § 4001(a)); *see also* 42 U.S.C. § 4001(b) ("Many factors

have made it uneconomic for the private insurance industry alone to make flood insurance

available to those in need of such protection on reasonable terms and conditions.").  The NFIA

established the National Flood Insurance Program (the "Program"), designated the Federal

Emergency Management Agency as the agency responsible for administering the Program, and

provided for funding from the U.S. Treasury.  *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 183

---

[2] The 2006 Complaint and the 2007 Complaint each allege a breach of contract claim against Liberty Mutual.  To date, Plaintiffs have not differentiated the claims in a meaningful way.  For example, Plaintiffs have not attempted to distinguish the damage caused by the 2005 flood from the damage caused by the 2006 flood.  This leads to questions as to which SFIP was allegedly breached, or if both were breached, what conduct constituted each breach.  (*See, e.g.*, Doc. No. 34, Sutor Aff. ¶¶ 2-3.)  An engineering report that Plaintiffs submitted as an exhibit to their trial memorandum—but which they did not submit in support of their opposition to Liberty Mutual's motion for summary judgment—sheds some light on the connection between the damage caused by the two floods.  (*See* Doc. No. 36, Ex. P-15.)  However, the report does not explain what steps, if any, Plaintiffs took before July 24, 2009, to provide Liberty Mutual with the information contained in the report.  Furthermore, the report is dated March 23, 2007, and is based on a visit to the property on December 11, 2006.  (*Id.* at 1-2.)  Since the 2006 flood occurred about fourteen months after the 2005 flood, this raises questions about how diligent Plaintiffs were in documenting the damage to the Property and why they did not get an engineering report in the interim between the floods.  In addition, Plaintiffs filed their first lawsuit on March 30, 2006, well before they obtained the engineering report on which they now rely.  In any event, we need not resolve these issues in order to address the instant Motion.

(2d Cir. 2006); *see also* 42 U.S.C. § 4017 (directing FEMA to establish a National Flood

Insurance Fund in the U.S. Treasury).  The NFIA authorizes FEMA "to prescribe regulations

establishing the general method or methods by which proved and approved claims for losses may

be adjusted and paid for any damage to or loss of property which is covered by flood insurance

made available under the provisions of this title."  42 U.S.C. § 4019.  The regulatory scheme

promulgated by FEMA is set out in the Code of Federal Regulations at 44 C.F.R. §§ 61.1 to

78.14.

FEMA initially administered the Program under a provision of the NFIA known as

Part A, 42 U.S.C. §§ 4251-56, which created a "pool of private insurance companies [that] issued

policies and shared the underwriting risk[] with financial assistance from the federal

Government."  *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 266 (3d Cir. 2004).

Since 1978, FEMA has administered the Program under Part B of the NFIA, 42 U.S.C. §§ 4071-

72.  *C.E.R.*, 386 F.3d at 266; 42 U.S.C. § 4041 (granting FEMA discretion to implement the

Program under Part B).  Part B of the NFIA provides for federal operation of the Program with

the assistance of private insurers.

In 1983, FEMA created the Write-Your-Own ("WYO") program.  *See* 44 C.F.R. §§ 62.23

to 62.24.  The WYO program permits private insurers ("WYO companies") to write SFIPs in

their own names.  Although the WYO companies write the SFIPs, FEMA regulations set the

terms and conditions of the policies, including the rate structures and premium costs.  *See* 44

C.F.R. §§ 61.4(b), 62.23(a), (c), (d).  Under the WYO program framework, "the federal

government underwrites the policies and private WYO carriers perform significant

administrative functions including 'arrang[ing] for the adjustment, settlement, payment and

defense of all claims arising from the policies.'" *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009) (footnote omitted). "WYO companies remit premiums collected, after deducting a scheduled amount for administrative expenses, to FEMA for deposit in the National Flood Insurance Fund. Claims are thus paid from federal funds." *Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d 239, 244 (4th Cir. 2007) (citation omitted); *see also Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 342 (5th Cir. 2005) (observing that SFIP "[c]laims are ultimately paid of out of the U.S. Treasury"). WYO companies are fiscal agents of the United States. 42 U.S.C. § 4071(a)(1). They are not, however, general agents of the of the federal government. 44 C.F.R. § 62.23(g).

Interpretation and construction of SFIPs are governed by federal common law and informed by standard insurance law principles. *See Linder & Assocs. v. Aetna Cas. & Sur. Co.*, 166 F.3d 547, 550 (3d Cir. 1999) (construing SFIP in accordance with standard insurance law principles); *see also Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 809 (3d Cir. 2005) (citing *Linder*, 166 F.3d at 550); *Studio Frames*, 369 F.3d at 382 ("[T]he development of the[] governing federal common law principles is informed by 'standard insurance law principles.'" (quoting *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 608 n.17 (4th Cir. 2002))).

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a movant is entitled to summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003). Where the non-moving party bears the burden of proof at trial, the moving

party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e)(2) (stating that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial"); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The non-moving party may not avert summary judgment with reliance on speculation or by rehashing the allegations in the pleadings. *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. When deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Knabe v. Boury Corp.*, 114 F.3d 407, 410 n.4 (3d Cir. 1997). Moreover, courts must not resolve factual disputes or make credibility determinations. *Siegel Transfer, Inc., v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## IV.    ANALYSIS

Liberty Mutual argues that it is entitled to summary judgment because Plaintiffs failed to comply with the terms of the SFIPs. Specifically, Liberty Mutual contends that the SFIPs required Plaintiffs to file a proof of loss in support of their current claims and that by not submitting a proof of loss in support of their current claims, Plaintiffs deprived themselves of the

7

ability to bring these lawsuits.  (Doc. No. 33 at 6-7.)  Plaintiffs respond by arguing that summary

judgment is not appropriate because they complied with the terms of the SFIPs by submitting

timely proofs of loss.  They argue that since the SFIPs do not have a stated requirement that

policyholders must file supplemental proofs of loss in support of supplemental claims, the fact

that they did not file supplemental proofs of loss has no bearing on their ability to litigate these

cases.  (Doc. No. 34-5 at 4-5.)  That Plaintiffs did not submit proofs of loss in support of their

supplemental claims is undisputed.  Thus, the parties' disagreement is purely legal:  may an SFIP

holder file a proof of loss for flood damage and then informally supplement it with damage

information and requests for payment, or must an SFIP holder submit a proof of loss in support

of each claim for loss?  The clear weight of authority dictates that SFIP policy holders must

submit a proof of loss in support of each claim for loss, supplemental or otherwise.

A proof of loss is a statement by the insured informing the insurer—either FEMA or a

WYO company—of the amount the insured is claiming under the policy.  *See* 44 C.F.R. pt. 61,

app. A(1), VII(J)(4).  The statement must be signed and sworn by the insured and provide the

insurer with nine specified pieces of information, including the specifications of damaged

buildings, detailed repair estimates, and a brief explanation of how the loss happened.  *See id.* at

VII(J)(4)(a)-(i).  As with all provisions of the SFIP, policyholders are presumed to know and

understand the proof of loss requirement, regardless of their actual knowledge or understanding.

*See Petersen v. Nat'l Flood Ins. Program*, 200 F. Supp. 2d 499, 505 (E.D. Pa. 2002) (citing

*Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 530 (D.N.J. 2000)).[3]  Compliance

---

[3] *See also Oaks v. Allstate Ins. Co.*, No. 05-191, 2006 U.S. Dist. LEXIS 83652, at *14 n.8 (E.D. Ky. Nov. 14, 2006) ("Policyholders in federal insurance programs are charged with knowledge of the terms governing those programs as defined in the applicable regulatory scheme.  Indeed, participants have a duty to 'familiarize' themselves with the program

with the proof of loss requirement is a condition precedent to payment under the SFIP and, by

extension, to an insured's right to bring suit against a WYO company. *See* 44 C.F.R. pt. 61, app.

A(1), VII(R) (informing insureds that they "may not sue us to recover money under this policy

unless you have complied with all the requirements of the policy"); *see also Marseilles*

*Homeowners Condo. Ass'n v. Fid. Nat'l Ins. Co.*, 542 F.3d 1053, 1057 n.2 (5th Cir. 2008) (per

curiam); *Mancini v. Redland Ins. Co.*, 248 F.3d 729, 733 (8th Cir. 2001). Since WYO

companies pay claims with money from the U.S. Treasury, courts must strictly adhere to the

conditions precedent contained in SFIPs. *Suopys*, 404 F.3d at 809.

Plaintiffs do not dispute that submitting a proof of loss is a condition precedent to their

ability to bring suit. Rather, they claim that they satisfied that condition by submitting timely

proofs of loss after the 2005 and 2006 floods. (Doc. No. 34-4 at 4-5; *see also* Doc. No. 34, Sutor

Aff., Exs. A, C.) They assert that "[b]ecause the policy terms must be strictly construed and

there is no requirement that *supplemental* [proofs of loss] be submitted for additional amounts

claimed, none are required under the terms of the policy." (Doc. No. 33-4 at 5.) Plaintiffs are

simply wrong. They cite no authority that supports their reading of the SFIP. However, there is

substantial authority for the proposition that policyholders must file proofs of loss in support of

all claims, including supplemental or additional claims, and that failure to do so warrants

summary judgment against the policyholder. *See, e.g.*, *D'Alessio v. Selective Ins. Co. of the Se.*,

No. 07-3483, 2008 U.S. Dist. LEXIS 61710, at *8-9 (E.D. Pa. Aug. 12, 2008) (rejecting the

---

requirements.") (internal citations omitted); *Lamann v. State Farm Ins. Co.*, No. 03-2993, 2005
U.S. Dist. LEXIS 2204, at *13 (E.D. La. Feb. 11, 2005) ("[T]he insured is charged with the
constructive knowledge of the provisions of the SFIP 'regardless of actual knowledge of what is
in the regulations or of the hardship resulting from ignorant innocence.'" (quoting *Richmond
Printing LLC v. Dir. FEMA*, 72 F. App'x 92, 98 (5th Cir. 2003))).

plaintiffs' argument "that their failure to comply with the regulations governing proof of loss should not bar their claim for additional flood insurance benefits because the regulations do not require that an insured file a second proof of loss for any additional claims").[4]  Thus, Plaintiffs' failure to file a proof of loss is fatal to their lawsuits.

Holders of SFIP policies have attempted to circumvent the proof of loss requirement by asserting various legal doctrines, such as waiver, estoppel, and relation back. Courts have routinely rejected such arguments, flatly holding that policyholders may not bring suit to recover an amount not claimed in a proof of loss.  *See Suopys*, 404 F.3d at 809 (stating that waiver and estoppel do not apply to the proof of loss requirement); *D'Alessio*, 2008 U.S. Dist. LEXIS 61710, at *8-9 (rejecting argument that WYO company should be estopped from enforcing the proof of

---

[4] *See also Wientjes v. Am. Bankers Ins. Co.*, No. 08-31212, 2009 U.S. App. LEXIS 17460, at *1-2 (5th Cir. Aug. 5, 2009) (per curiam) (non-precedential) (affirming district court's grant of summary judgment in favor of the WYO company where the plaintiffs had not filed a proof of loss in support of the claims that formed the basis for the lawsuit); *Marseilles*, 542 F.3d at 1054 (affirming district court's determination that WYO company was entitled to summary judgment in its favor because the plaintiff had not filed a proof of loss in connection with its claim for additional damages); *Robertson v. Nat'l Flood Ins. Program*, No. 09-1724, 2009 U.S. Dist. LEXIS 99950, at *2 (E.D. La. Oct. 27, 2009) (granting summary judgment in favor of defendant National Flood Insurance Program where the plaintiff had not filed a proof of loss in support of her supplemental claims); *Schubert v. Chertoff*, No. 07-5075, 2009 U.S. Dist. LEXIS 75835, at *10 (E.D. La. Aug. 26, 2009) (granting defendant WYO company's motion for summary judgment where the plaintiff had "failed to submit evidence establishing a genuine issue of material fact concerning whether she filed a proof of loss for the damages sought in [the] suit"); *Howell v. State Farm Ins. Cos.*, 540 F. Supp. 2d 621, 633 (D. Md. 2008) (granting defendant WYO companies' motion for summary judgment because it was "undisputed that the plaintiffs failed to submit timely and complete proofs of loss for the benefits claimed in [the] lawsuit"); *Oaks*, 2006 U.S. Dist. LEXIS 83652, at *14 ("Plaintiff's failure to comply with the proof of loss requirement procedurally forfeits any claim to additional damages."); *Ambassador Beach Condo. Assoc. v. Omaha Prop. & Cas. Ins. Co.*, 152 F. Supp. 2d 1315, 1317 (N.D. Fla. 2001) (granting summary judgment where the "additional payments sought by [the plaintiff were] not authorized under the provisions of the standard flood insurance policy because they were not included in a timely proof of loss"); *Nabhan v. Nat'l Con-Serv Inc.*, 1 F. Supp. 2d 91, 96 (D. Mass. 1998) (dismissing complaint where it was uncontested that the plaintiffs had not submitted a proof of loss for the damages they sought in the suit).

loss requirement for supplemental claims); *Sodi II, LLC v. Selective Ins. Co. of Am.*, No. 06-2573, 2008 U.S. Dist. LEXIS 2214, at *10-11 (D.N.J. Jan. 11, 2008) (rejecting argument that untimely proof of loss related back to timely proof of loss); *Petersen*, 200 F. Supp. 2d at 505-06 (rejecting the plaintiffs' waiver and estoppel arguments where the plaintiffs had filed no proof of loss in support of their supplemental claim). Although Plaintiffs have not clearly articulated such arguments here, their briefing contains implicit estoppel and waiver arguments. In her affidavit in support of Plaintiffs' opposition to Liberty Mutual's motion for summary judgment, Plaintiff Teresa Sutor states that an employee of the National Flood Processing Center informed her that she could "submit a supplemental claim based upon the report of an engineer . . . ." (Doc. No. 34, Sutor Aff. ¶ 6.) She further states that "[a]t no time was [she] advised . . . that it would be necessary to file a Supplemental Proof of Loss . . . ." (*Id.* ¶ 7.) The unasserted conclusions contained in Sutor's statements are (1) that because she was not told that she had to file a supplemental proof of loss, she did not have to file one, and (2) that Liberty Mutual should not now be able to invoke the proof of loss requirement to obtain summary judgment in the instant lawsuits because a National Flood Processing Center Employee provided Sutor with misleading or incomplete information. Neither conclusion has any basis in the law, and neither creates a genuine issue of material fact for trial. *See, e.g.*, *Stanton v. State Farm Fire & Cas. Co.*, 169 F. Supp. 2d 1109, 1116 (D.S.D. 2001) (rejecting the plaintiffs' argument that "no supplemental proof of loss was required because State Farm never requested one" and granting summary judgment in favor of State Farm, a WYO company).

There are no questions of material fact surrounding Plaintiffs' failure to file proofs of loss in support of the damages for which they now seek recovery. Plaintiffs suffered losses as a result of the 2005 and 2006 floods. They submitted proofs of loss in connection with the floods, and

Liberty Mutual tendered payments for those proofs of loss. Plaintiffs accepted those payments while at the same time informing Liberty Mutual that they had supplemental claims. They never filed supplemental proofs of loss. Because Plaintiffs failed to comply with this condition precedent to their right to sue, Liberty Mutual is entitled to summary judgment.

## V.      CONCLUSION

For the foregoing reasons, Liberty Mutual's Motion for Summary Judgment will be granted.

An appropriate Order follows.

BY THE COURT:


/s/ *R. Barclay Surrick*
U.S. District Judge

12